UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                Case No. 1:22-cr-20239

v.

                                          Honorable Thomas L. Ludington
DEMARCUS BRAZIL,                          United States District Judge

                Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR A SENTENCE REDUCTION**

Defendant Demarcus Brazil—who is currently serving a 110-month term of imprisonment for possessing with the intent to distribute a controlled substance and possessing a firearm during a drug trafficking crime—seeks a sentence reduction. But Defendant has not shown any extraordinary and compelling reasons warranting one. As a result, Defendant's Motion for a Sentence Reduction will be denied.

**I.**

In September 2022, Defendant Demarcus Brazil pleaded guilty to possessing with the intent to distribute a controlled substance and possessing a firearm during a drug trafficking crime, violating 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 924(c). *See* ECF Nos. 21; 23; 25. Based on these offenses, Defendant's recommended sentence was 117 months of imprisonment. *See* ECF No. 28 (sealed) at PageID.133–34. His attorney sought a term of imprisonment of 106 months, highlighting several hardships Defendant endured throughout his life, which included the loss of his mother and other family members when he was young and collateral issues stemming from those losses. *See* ECF No. 36 at PageID.189–95. On January 12, 2023, this Court considered these

issues, *see id.* at PageID.196–97, 199, Defendant was sentenced to 110 months of imprisonment, followed by three years of supervised release, ECF No. 33.

After acknowledging his appellate rights, *see* ECF No. 36 at PageID.201, Defendant did not directly appeal his sentence or otherwise challenge it under 28 U.S.C. § 2255. But on March 20, 2025, Defendant moved for a sentence reduction. ECF No. 37.

## II.

Since the "dawn of the [American] Republic," federal district courts have enjoyed vast discretion when crafting and imposing sentences. *Concepcion v. United States*, 597 U.S. 481, 486 (2022). But after a sentence is crafted and imposed, the Court's discretion is cabined, and it may only modify the sentence when congressionally authorized to do so. *Id.* at 495; *see also United States v. McCall*, 56 F.4th 1048, 1055 (6th Cir. 2022) (en banc) (citing 18 U.S.C. § 3582(b)–(c)) (explaining the limits on district courts' discretion to modify sentences and the importance of finality in sentencing). One such congressional authorization involves sentence reductions under § 18 U.S.C. § 3582(c)(1)(A)—which are still subject to judicial prudence and discretion-guiding criteria. *See McCall*, 56 F.4th at 1054–55. These are commonly referred to as compassionate releases.

A well-delineated framework governs these sentence reduction motions. Under this framework, courts may reduce an inmate's term of imprisonment upon motion of the BOP. 18 U.S.C. § 3582(c)(1)(A). And, since Congress enacted the First Step Act of 2018, prisoners can submit these motions themselves if they exhaust the BOP's administrative process or wait thirty days after the warden receives their release application, whichever is first. *Id.*

If a prisoner satisfies § 3582's exhaustion requirements, reviewing courts employ "a three-step inquiry" to determine whether a sentence reduction is warranted. *McCall*, 56 F.4th at 1054 (cleaned up). First, courts must determine whether the prisoner has shown "that 'extraordinary and

compelling' reasons warrant" a reduction. *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Second, "[c]ourts must confirm that any sentence reduction 'is consistent with applicable policy statements issued by the Sentencing Commission.'" *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)). Third, the prisoner "must persuade the district judge to grant the motion after the court considers the § 3553(a) factors." *Id.* And district courts may only grant the prisoner's motion if all three criteria favor a reduction. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

### III.

#### A. Exhaustion

Begin with exhaustion. Before filing a motion for a sentence reduction, under § 3582(c)(1)(A), a prisoner must exhaust all BOP administrative remedies—namely, filing a request with the prison Warden and appealing a timely adverse decision from the Warden. *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1105 (6th Cir. 2020). Otherwise, a prisoner must wait 30 days after submitting a sentence reduction request without a response from the Warden to file a motion in federal court. *Alam*, 960 F.3d at 833; *Jones*, 980 F.3d at 1105.

Here, Defendant satisfies § 3582(c)(1)(A)'s exhaustion requirement. Defendant submitted a request for a sentence reduction to the relevant Warden on January 29, 2025. ECF No. 37 at PageID.216. After over 30 days had passed without a response from the Warden, Defendant filed his Motion with this Court on March 20, 2025, fulfilling the statutory waiting period. *See Alam*, 960 F.3d at 834.

The Government resists this conclusion. The Government argues that Defendant provides no evidence that he exhausted his administrative appeals. ECF No. 42 at PageID.228. This argument misses the mark: Defendant did not need to exhaust administrative appeals here. Indeed, under the sentence reduction framework, prisoners need only exhaust their administrative appeals

- 3 -

if the Warden issues a *timely* adverse decision on a prisoner's sentence reduction request. *See* 18 U.S.C. § 3582(c)(1)(A) (noting that a prisoner must "fully exhaust[] all administrative rights to appeal a" denial of the sentence reduction request by the Bureau of Prisons). But where, as here, 30 days pass without a response from the Warden, a prisoner may file a motion for a sentence reduction in a federal court, "no matter the appeals available to them." *Alam*, 960 F.3d at 834. As a result, Defendant has satisfied the threshold exhaustion requirements, and this Court will address the merits of his Motion.

### B. Extraordinary and Compelling Circumstances

Defendant has not shown extraordinary and compelling reasons for a sentence reduction. Congress tasked the United States Sentencing Commission with "describing what could be considered extraordinary and compelling reasons for" sentence reductions. *United States v. Bricker*, 135 F.4th 427, 433 (6th Cir. 2025) (citing 28 U.S.C. § 994(t)). In 2007, the Sentencing Commission did just that when it promulgated U.S.S.G. § 1B1.13 cmt. n.1(A)-(D) (2007). *Id.* But this 2007 version of the § 1B1.13 applied only to BOP-initiated motions for compassionate releases. *Id.* So in November 2023, the Sentencing Commission amended § 1B1.13, extending it to prisoner-initiated motions for compassionate releases. *See id.* at 434.

As amended, § 1B1.13 provides six general categories of potentially extraordinary and compelling reasons for a sentence reduction. *See* U.S.S.G. § 1B1.13(b)(1)–(6); *see also United States v. Washington*, 122 F.4th 264, 267 (6th Cir. 2024). The six general categories are as follows: the (1) medical circumstances of defendant; (2) aging of the defendant; (3) family circumstances of the defendant; (4) defendant being a victim of abuse while incarcerated; (5) other reasons or a combination of reasons similar in gravity to the first four; and (6) defendant having an unusually long sentence due to nonretroactive changes in law, where such change would produce a gross sentencing disparity. *See* U.S.S.G. § 1B1.13(b)(1)–(6).

Against that backdrop, Defendant generally offers two main reasons for his sentence reduction. First, Defendant argues that he is subject to a sentencing disparity. *See* ECF Nos. 37 at PageID.205–14; 43 at PageID.245–48. Second, Defendant cites the COVID-19 pandemic's creation of unusually harsh conditions in prison. *See* ECF Nos. 37 at PageID.208, 214; 43 at PageID.247–48. These arguments are addressed in turn.

### 1. Sentencing Disparity

Start with Defendant's disparity argument. Defendant generally contends that he is serving a disparate sentence because, if properly litigated, he would receive a shorter sentence if he were sentenced today. *See, e.g.*, ECF No. 37 at PageID.205–14. As support for this contention, he invokes nonretroactive changes in sentencing law, his life circumstances, and arguments that he states could have reduced his sentence had his attorney made them when he was sentenced. *See id.* But these contentions lack merit.

Begin with the nonretroactive changes in law. Before the Sentencing Commission promulgated its new policy statement in 2023—extending it to prisoner-initiated motions for sentence reductions—the Sixth Circuit and district courts defined what constitutes an "extraordinary and compelling" reason for a reduction. And in *McCall*, the Sixth Circuit held that "[n]onretroactive legal developments, considered alone or together with other factors, cannot amount to an 'extraordinary and compelling reason' for a sentence reduction," under the plain meaning of the statute. 56 F.4th at 1065–66.

But the Sentencing Commission's 2023 amendments to U.S.S.G. § 1B1.13 took the opposite approach. Indeed, the amended policy statement provides that nonretroactive changes in law *can* constitute an extraordinary and compelling reason for release under certain conditions:

> **(6) Unusually Long Sentence.--**If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made

> retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6) (emphasis in original). The Sentencing Commission's deviation from *McCall* through § 1B1.13(b)(6) posed a question: whether the Sentencing Commission has the "power to overrule a Circuit Court's interpretation of a statute or to promulgate a policy statement that contradicts other federal statutes." *Bricker*, 135 F.4th at 430.

In April 2025, the Sixth Circuit addressed this question in *Bricker*. In *Bricker*, it "definitively answered 'no.'" *United States v. Harper*, No. 2:11-CR-20188-GAD-RSW-2, 2025 WL 1710224, at *4 (E.D. Mich. June 18, 2025) (quoting *Bricker*, 135 F.4th at 430). Specifically, the Sixth Circuit held that § 1B1.13(b)(6) is entirely "invalid" because (1) the Sentencing Commission exceeded its delegated authority in promulgating it, and (2) it violated separation-of-powers principles by "forcing a judge to accept the Commission's interpretation of a law . . . and by transferring the judiciary's interpretive judgment to the Commission." *Bricker*, 135 F.4th at 435–49. As a result, the Sixth Circuit reiterated that "'[n]onretroactive legal developments do not factor into the extraordinary and compelling analysis. Full stop.'" *Bricker*, 135 F.4th at 434, 438 (quoting *McCall*, 56 F.4th at 1066).

Here, because of *Bricker*, Defendant's arguments concerning nonretroactive legal developments and sentencing disparities grounded in § 1B1.13(b)(6) are foreclosed. *See, e.g., United States v. Walker*, No. CR 15-20262, 2025 WL 1419927, at *2 (E.D. Mich. May 16, 2025); *United States v. Carpenter*, No. 1:15-CR-26, 2025 WL 1413586, at *3 (S.D. Ohio May 15, 2025); *United States v. Pinke*, No. CR 7:09-001-DCR, 2025 WL 1600934, at *2 (E.D. Ky. June 5, 2025); *United States v. Davidson*, No. 3:08-CR-169, 2025 WL 1243902, at *4 (E.D. Tenn. Apr. 29, 2025). After all, *Bricker* invalidated § 1B1.13(b)(6) and directed courts not to factor such developments

into the extraordinary and compelling analysis—full stop. So the nonretroactive legal developments Defendant cites are not extraordinary and compelling reasons warranting release.[1]

Turn to Defendant's arguments about his life circumstances contributing to the sentencing disparity—losing his mother and other family members, socioeconomic status, and his young age. *See, e.g.*, ECF No. 37 at PageID.206–07. While Defendant experienced hardship in his life—which this Court acknowledged at sentencing, *see* ECF No. 36 at PageID.196–97, 199—this hardship is not an extraordinary and compelling reason for a sentence reduction. To that end, this hardship existed and was considered at sentencing, *see id.*, and "facts that existed at sentencing cannot later be construed as extraordinary and compelling reasons to reduce a final sentence." *United States v. Hunter*, 12 F.4th 555, 570 (6th Cir. 2021); *see also United States v. Cornman*, No. 2:21-CR-7, 2023 WL 33448, at *3 (W.D. Mich. Jan. 4, 2023).

And Defendant's remaining contention fares no better. Defendant contends that there were arguments concerning the application of sentencing guidelines that, if "properly presented" by his attorney, could have resulted in a shorter sentence today. *See*, *e.g.*, ECF No. 37 at PageID.205, 207–14. But like his life circumstances, this contention is predicated on facts that existed at sentencing. More importantly, these arguments collaterally attack the merits of the length of his sentence, and, as the Government notes, the proper vehicle for such arguments is a direct appeal or a motion under 28 U.S.C. § 2255. *United States v. Mattice*, No. 20-3668, 2020 WL 7587155, at

---

[1] At times, Defendant cites Amendment 821, which contains retroactive subparts. *See, e.g.*, ECF No. 37 at PageID.209; *see also United States v. Jackson*, No. 1:21-CR-20081, 2025 WL 2408789, at *1 (E.D. Mich. Aug. 20, 2025). But Defendant's Motion does not seem to invoke the retroactive components of the Amendment because he cites disparities contemplated by U.S.S.G. § 1B1.13(b)(6). *See, e.g.*, ECF No. 37 at PageID.209. Even so, if Defendant wishes to rely on the retroactive portions of Amendment 821, the appropriate vehicle is to file a separate 821 motion for review under the Eastern District of Michigan's Amendment 821 protocol. *See Jackson*, 2025 WL 2408789, at *2.

*2 (6th Cir. Oct. 7, 2020) (citation modified) (observing that sentence reduction motions under § 3582(c) are "not the proper vehicle for arguments that were or could have been raised on direct appeal or in a 28 U.S.C. § 2255 motion").

All in all, Defendant's sentence disparity arguments do not present an extraordinary and compelling reason for a sentence reduction.

### 2. COVID-19

Move to Defendant's argument concerning the COVID-19 pandemic. Defendant contends that the COVID-19 pandemic creates unusually harsh and punitive conditions in prison. *See* ECF Nos. 37 at PageID.208, 214; 43 at PageID.247–48. This argument does not pass muster.

Under U.S.S.G. § 1B1.13(b)(1)(D), a pandemic could be an extraordinary and compelling reason for a sentence reduction if the prisoner satisfies three conditions. *United States v. Strong*, No. 3:09-CR-163-TAV-JEM-2, 2025 WL 1262399, at *5 (E.D. Tenn. Apr. 30, 2025). First, the prisoner must show that he is "housed at a correctional facility affected" by (1) an "ongoing outbreak of infectious disease," or (2) "an ongoing public health emergency declared by the appropriate federal, state, or local authority." U.S.S.G. § 1B1.13(b)(1)(D)(i). Second, the prisoner must demonstrate that "due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to" such disease or emergency. *Id.* § 1B1.13(b)(1)(D)(ii). Third, the prisoner must establish that "such risk cannot be adequately mitigated in a timely manner." § 1B1.13(b)(1)(D)(iii).

Here, Defendant has not established any of the § 1B1.13(b)(1)(D) conditions. First, Defendant is currently housed at FCI Gilmer, which is not experiencing an ongoing outbreak of COVID-19. *See* FED. BUREAU OF PRISONS, *Inmate Search*, https://www.bop.gov/inmateloc/ (search by register number 01944-510) (last accessed Oct. 10, 2025); *see also* FED. BUREAU OF PRISONS, *Inmate COVID Data*, https://www.bop.gov/about/statistics/statistics_i

nmate_covid19.jsp (last accessed Oct. 10, 2025) (displaying that FCI Gilmer—facility code GIL—had zero open cases when Defendant filed his Motion).[2] Nor is COVID-19 still a declared ongoing public health emergency. *See Strong*, 2025 WL 1262399, at *5 (assuming as much in the analysis). Second, Defendant has not demonstrated that his health puts him at an increased risk of medical complications from COVID-19. And third, even if there were a risk to Defendant, he has not shown that a COVID-19 vaccine cannot adequately mitigate it. *See United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) ("[I]ncarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction.").

In sum, Defendant has not presented extraordinary and compelling reasons that warrant a sentence reduction.[3] So Defendant's Motion for a Sentence Reduction, ECF No. 37, will be denied.

**IV.**

Accordingly, it is **ORDERED** that Defendant's Motion for a Sentence Reduction, ECF No. 37, is **DENIED**.

Dated: October 17, 2025                                s/Thomas L. Ludington
                                                       THOMAS L. LUDINGTON
                                                       United States District Judge

---

[2] Courts are "permitted to take judicial notice of information on the Inmate Locator Service." *Demis v. Sniezek*, 558 F.3d 508, 513, n.2 (6th Cir. 2009) (quotation omitted).

[3] Because "3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors" only where "the reduction [is] authorized by [steps one and two]," *United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020), this Court need not address the § 3553(a) factors at this stage.